**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nickolas Cardinale,<br><br>    Plaintiff,<br><br>v.<br><br>Shea Thueringer, et al.,<br><br>    Defendants. | No. CV-22-01743-PHX-DJH<br><br>**ORDER** |

  Defendants Shea Theuringer ("Theuringer"), Selluxe Group ("Selluxe"), and Brian Tollefson ("Tollefson") (collectively, "Defendants") have filed a Motion to Dismiss Plaintiff Nickolas Cardinale's ("Plaintiff") Complaint (Doc. 7).[1] Defendants seek to dismiss this matter under Federal Rule of Civil Procedure 12(b)(2), arguing this Court lacks specific personal jurisdiction over them. (*Id.*) Defendants further argue Plaintiff's claims should be dismissed under Rule 12(b)(6)[2] because Plaintiff failed to plead sufficient factual allegations for plausible claims. (*Id*.)

  The Court must now decide whether Defendants have sufficient contacts with Arizona to establish specific personal jurisdiction. They do not. The Court grants Defendants' Motion to Dismiss.

/ / /

---

[1] The Motion is fully briefed. (Docs. 16; 23).

[2] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

## I.     Background[3]

The Court will recount the parties, the sale at issue, and the five Counts in Plaintiff's Complaint.

### A.  The Parties

Plaintiff is an Arizona resident. (Doc. 1-3 at ¶ 1). Thueringer is a Nevada resident. (*Id.* at ¶ 2). Selluxe is a Florida limited liability company nationally recognized for restoring classic cars. (*Id.* at ¶¶ 3, 15). Tollefson is a Florida resident who is the sole member of Selluxe and manages the company. (*Id.* at ¶ 4). Tollefson assists customers with selling classic cars for a fee. (*Id.* at ¶ 15). Defendant Raul Maribel ("Maribel") is a Nevada resident.[4] (*Id.* at ¶ 5).

### B.  Sale of the Lincoln Continental

This case concerns the sale of Theuringer's 1965 Lincoln Continental convertible ("the Lincoln"). (*Id.* at ¶ 8-10). Theuringer asked his mechanic, Maribel, to market the Lincoln for sale on Theuringer's behalf. (*Id.* at ¶¶ 10, 33).

Maribel subsequently posted the Lincoln for sale on a social media site. (*Id.* at ¶ 16). Tollefson saw the listing and contacted Maribel, suggesting that Maribel should sell the Lincoln through Tollefson's company, Sulluxe, because Sulluxe's reputation would help garner a higher sale price. (*Id.*) Maribel agreed to Tollefson's proposal. (*Id.* at ¶ 17). Tollefson then listed the Lincoln for sale by auction on eBay in mid-January 2022 using Sulluxe's eBay account. (*Id.* at ¶ 19). Theuringer knew and approved of Maribel selling the Lincoln through Selluxe. (*Id.* at ¶ 20).

Plaintiff placed a bid on the Lincoln during the eBay auction, but he was not the highest bidder. (*Id.* at ¶ 21). After the auction, Tollefson contacted Plaintiff to see if he was still interested in the Lincoln, informing Plaintiff the higher bidder had backed out.

---

[3] Unless otherwise noted, these facts are taken from Plaintiff's Complaint (Doc. 1-3). The Court will assume the Complaint's factual allegations are true, as it must in evaluating a motion to dismiss. *See Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).

[4] Maribel has not filed an appearance in this action and the Clerk of Court entered default under Rule 55(a) against him on December 15, 2022. (Doc. 22).

(*Id.*)  Plaintiff indicated he was still interested and offered $100,000 for the Lincoln.  (*Id.*) Tollefson communicated Plaintiff's offer to Maribel, who accepted it.  (*Id.* at ¶ 22).

Plaintiff then wired the $100,000 to Maribel's account.  (*Id.* at ¶ 23).  Plaintiff arranged for a vehicle transportation carrier to pick up the Lincoln in Nevada, but Maribel stopped responding.  (*Id.* at ¶ 24).  Maribel never delivered the Lincoln to Plaintiff.  (*Id.* at ¶ 24).  Maribel also did not remit the payment to Theuringer.  (*Id.* at ¶ 25).  Theuringer also did not deliver the Lincoln.  (*Id.* at ¶ 26).

### C. Plaintiff's Complaint

Plaintiff filed a Complaint against Defendants alleging five counts: Count I for Consumer Fraud under A.R.S. § 44-1522(A) (*Id.* at ¶¶ 27–31); Count II for negligence (*Id.* at ¶¶ 32–46); Count III for vicarious liability (*Id.* at ¶¶ 37–40); Count IV for breach of contract (*Id.* at ¶¶ 40–46); and Count V for negligent misrepresentation (*Id.* at ¶¶ 47–60). Defendants seek to dismiss this matter under Rule 12(b)(2), arguing this Court lacks specific personal jurisdiction over them.  (Doc. 7).  Defendants further argue Plaintiff's claims should be dismissed under Rule 12(b)(6) because Plaintiff failed to plead sufficient factual allegations for plausible claims.

## II.   Legal Standard

A plaintiff bears the burden of establishing personal jurisdiction over all defendants. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990)).  A defendant may move to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2). When a defendant does so, "the plaintiff is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp. 2d. 1144, 1151 (D. Ariz. 2001).  Where the motion is based on written materials, "the plaintiff need only make a *prima facie* showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  In determining whether the plaintiff has met this burden, "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a *prima facie* case for

personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

"Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). Arizona exerts personal jurisdiction to the "maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a); *see also A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995). Therefore, the analysis of personal jurisdiction under Arizona law and federal law are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). Under the Due Process Clause, "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal citations omitted).

A court may assert general or specific jurisdiction over the nonresident defendant. *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, whereas specific jurisdiction exists when the controversy arises from or is related to the defendant's specific contact with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). The "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291. Where neither general nor specific jurisdiction exists, the court must dismiss the defendant under Rule 12(b)(2).

**III. Discussion**

The Court will first consider whether Plaintiff has made a *prima facie* showing that this Court has specific jurisdiction over Defendants.[5]

/ / /

---

[5] The parties agree that general jurisdiction is not at issue. (Doc. 7 at 4; Doc. 16 at 5).

- 4 -

### A. Specific Jurisdiction

Defendants Tollefson and Selluxe argue Plaintiff has not made a *prima facie* showing that Defendants have availed themselves of the Arizona forum, arguing that they performed one transaction via the internet to purchase a car from a person who lived in Arizona. (Doc. 7 at 13). Plaintiff argues Defendants reached into Arizona to solicit Plaintiff for the sale and targeted him via telephone calls and text messages. (Doc. 16 at 6).

Specific jurisdiction requires that courts ensure that the defendant has "minimum contacts" with a forum to ensure that litigating in the jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The crux of the inquiry is the defendant's contact with the forum and not the defendant's contacts with the plaintiff." *Walden*, 571 U.S. at 284. To determine whether specific personal jurisdiction has been established, courts in the Ninth Circuit apply a three-prong "minimum contacts" test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). This test looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Burger King*, 471 U.S. at 475. The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales*, 466 U.S. at 417. The Court must "reject[] attempts to satisfy the

defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284.

A plaintiff must satisfy the first two prongs to establish personal jurisdiction. *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Burger King*, 471 U.S. at 476–78. If one of the first two prongs is not met, the inquiry ends there, and the case must be dismissed. *Id.*

### 1. Prong one: Purposeful Availment and Direction

To determine the first prong of the minimum contacts test, the Ninth Circuit has established separate inquiries depending on whether the nature of the claims at issue arise from a contract or alleged tortious conduct. *See Morrill*, 873 F.3d at 1142. ("We generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct."). The Court will apply both tests because Plaintiff's Complaint alleges contract and tortious conduct claims. (Doc. 1-3).

#### a. Defendant Tollefson and Selluxe[6]

Plaintiff's Complaint alleges a breach of contract claim against Selluxe for its failure to deliver the Lincoln to Plaintiff in exchange for payment of the purchase price. (Doc. 1-3 at ¶ 44). Plaintiff's Complaint also alleges a negligent misrepresentation claim against Tollefson because of his representation that he was acting on behalf of a "client." (Doc. 1-3 at ¶ 49). The Court will begin with the "purposeful availment" inquiry to determine whether the first prong of the minimum contacts test is met. *Id.* The United States Supreme Court has defined purposeful availment as:

> where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to

---

[6] The Court will analyze Defendant Tollefson and Sulluxe together because Tollefson owns Selluxe. (Doc. 1-3 at ¶¶ 3, 15).

require him to submit to the burdens of litigation in that forum as well.

*Id.* at 1149 (quoting *Burger King Corp.*, 471 U.S. at 475–76).

The purposeful availment analysis in breach of contract cases requires a "qualitative evaluation of the defendant's contact with the forum state." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003). "As the Supreme Court has expressly cautioned, a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). Rather, there must be "actions by the defendant himself that create a 'substantial connection' with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Burger King*, 471 U.S. at 475). In other words, a nonresident defendant must have "engaged in significant activities within a State" or "created continuing obligations" between himself and residents of the forum. *Burger King*, 471 U.S. at 475. In determining whether such contacts exist, courts are to consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* "Merely random, fortuitous, or attenuated contacts are not sufficient." *Id.* (internal quotation marks omitted).

Plaintiff fails to meet the first prong of the specific jurisdiction test because "the lone transaction for the sale of one item does not establish that the [d]efendants purposefully availed themselves of the privilege of doing business in [Arizona]." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (holding that a single eBay sale to a California resident did not give rise to personal jurisdiction). Plaintiff argues this case is distinguishable from *Boschetto* because Tollefson targeted Plaintiff for the sale of the Lincoln while the defendant in *Boschetto* was a random purchaser. (Doc. 16 at 9). It is true that Tollefson contacted Plaintiff after the highest bidder pulled out of the sale. (Doc. 1-3 at ¶ 21). However, Tollefson's phone call and text messages alone are insufficient to show Tollefson was availing himself of the privileges of Arizona law. Indeed, the second highest bidder could have been from anywhere in the United States. And the Ninth Circuit has made clear that a "fleeting" business relationship with a "center of gravity lay[ing]

elsewhere," is insufficient to confer specific personal jurisdiction. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (finding sufficient contacts existed to exercise personal jurisdiction where the defendant had *ongoing payment obligations in California*, evincing a sustained relationship) (emphasis added). Nothing indicates Tollefson had a sustained relationship to Arizona or that Arizona was the "center of gravity" for this sale. *Id.* To the contrary, Plaintiff wired his payment to Maribel's account in Nevada. (Docs. 1-3 at ¶ 23; 16-1 at 3, ¶ 8). Plaintiff arranged a vehicle transportation carrier to pick up the Lincoln in Nevada. (Doc. 1-3 at ¶ 24). And Plaintiff offers no formal contract with ongoing obligations to Arizona beyond Tollefson's limited call and texts.

Plaintiff further argues that even a "single act" by the Defendants can support jurisdiction.[7] (Doc. 16 at 10, citing *Burger King*, 471 U.S. at 476 n.18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957))). While that proposition may be true, the "single act" must create a "substantial connection" with the forum to be sufficient for personal jurisdiction purposes. For example, in *McGee*, "the Court did not decide the jurisdictional issue on a quantitative assessment of the number of contracts the defendant had entered into in the forum state; rather, it looked to the content or qualitative nature of the contract before it, and reasoned that the contract gave rise to ongoing obligations that connected the defendant with the forum state." *Boschetto*, 539 F.3d at 1017 n.3. Here, there is no evidence that Tollefson traveled to Arizona or engaged in other transactions with Arizona residents either through eBay or otherwise. Therefore, the contract did not create any "substantial connection" between Plaintiff and Tollefson beyond the contract itself. *McGee*, 355 U.S. at 223.

Plaintiff attempts to counter by noting that Tollefson sought a continuing parts-supply relationship with Plaintiff when Tollefson texted, after the sale, "if for whatever

---

[7] Plaintiff cites to out-of-circuit cases to support the proposition that a single act can create a substantial connection with the forum. (Doc. 16 at 10-12 citing *Ricker v. Mercedes-Benz of Georgetown*, 191 N.E.3d 1179 (Ohio Ct. App. 2022); *Advanced Sols. Life Scis., LLC v. BioBots, Inc.*, 2017 WL 2114969, at *6 (W.D. Ky.); *see also KSTP-FM, LLC v. Specialized Comm'n, Inc.*, 602 N.W.2d 919, 924 (Minn. Ct. App. 1999)). These cases are neither binding nor persuasive under these facts.

reason you need some odds and Lincoln parts, I got you covered[.]" (Doc. 16-1 at 10). This text led to a separate transaction for a hood emblem. (*Id.* at 11). But Plaintiff's argument is misplaced. It is not the number of contracts, but rather the quality and nature of Tollefson's contacts in the forum state that determine whether personal jurisdiction exists. *See Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1252 (9th Cir. 1980) (noting that "the number of transactions . . . and the amount of money involved do not reflect the quality or nature of the contacts and, therefore, should not be considered"). Rather, the Court must consider Tollefson's contacts "with the forum state itself, not the defendant's contacts with persons who reside there." *Burger King*, 471 U.S. at 475. To that end, Tollefson does not reside in Arizona, maintain an office or business in Arizona, or own any real property in Arizona. (Doc. 7 at ¶¶ 3–5). Nor does Selluxe maintain a principal place of business in Arizona or have any employees or offices in Arizona. (*Id.* at ¶¶ 7–9).

In sum, Tollefson's phone call and text messages to Plaintiff about the sale of the Lincoln do not constitute sufficient minimum contacts with Arizona such that Tollefson could have reasonably anticipated being haled into court in Arizona. *See Gray Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 475–76) ("A defendant has purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created continuing obligations between himself and the residents of the forum.'"). Plaintiff does not allege Tollefson conducts regular sales in Arizona or allege any other obligations to the forum state. The Court accordingly finds "this was a one-time for the sale of a good that involved the forum state only because that is where the purchaser happened to reside, but otherwise created no 'substantial connection' or ongoing obligations there." *Boschetto*, 539 F.3d at 1019.

Plaintiff's Complaint also alleges a negligent misrepresentation claim against Tollefson because of his representation that he was acting on behalf of a "client." (Doc. 1-3 at ¶ 49). In intentional tort cases, "a forum State's exercise of jurisdiction over an out-

of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Axiom Foods*, 874 F.3d at 1068. The purposeful direction test requires that a defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1069 (citation omitted).

Even assuming Tollefson's phone call with Plaintiff satisfies the first element, Plaintiff has not established the second element because Tollefson did not target Arizona in any of his conduct. In other words, the Court cannot assume that Tollefson intentionally targeted Arizona simply because Tollefson called the second highest bidder who happened to reside in Arizona. *See Schwarzenegger*, 374 F.3d at 807 (holding that jurisdiction exists where a defendant intentionally targets his harmful conduct—not necessarily where a plaintiff resides); *see also Burger King*, 471 U.S. at 474 (holding that express aim requires "reasonabl[e] anticipat[ion] [of] being haled into court" in that forum). Without targeting the state of Arizona, Tollefson could not have foreseen litigation there based on a phone call and some text messages with an Arizona resident. Plaintiff has therefore failed to make a *prima facie* showing that Tollefson's conduct was expressly aimed at Arizona, and he fails to satisfy the second element of the purposeful direction test.

For these reasons, Plaintiff has failed to meet his burden under prong one of the minimum contacts test and the Court must dismiss Tollefson and Selluxe from this case for lack of personal jurisdiction.

### b. Defendant Thueringer

Count Two and Three of Plaintiff's Complaint allege a negligence claim and a vicarious liability claim against Thueringer for his selection and subsequent failure to supervise or otherwise control Maribel as his agent. (Doc. 1-3 at ¶ 32–40). Plaintiff argues Thueringer is subject to personal jurisdiction in Arizona based on the conduct of his two sales agents, Maribel and Selluxe. (Doc. 16 at 13–14). Thueringer argues neither Maribel nor Selluxe were his agents because they did not have actual or apparent authority to engage in business on his behalf. (Doc. 23 at 4).

Even if Maribel and Selluxe were acting as Thueringer's agents, the record shows Thueringer does not have sufficient minimum contacts to have created a "substantial connection" with Arizona. *Boschetto*, 539 at 1017. This is because the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales*, 466 U.S. at 417.

Apart from arguing Thueringer is subject to personal jurisdiction because of Maribel and Selluxe's conduct, Plaintiff raises no further arguments. (Doc. 16 at 13–14). And there are no facts showing Thueringer engaged in "significant activities" within Arizona or otherwise created "continuing obligations" with forum residents such that he invoked the benefits and protections of the Arizona's laws. *Gray*, 913 F.2d at 760. Indeed, Thueringer neither resides nor conducts business in Arizona. (Doc. 7 at 21 ¶¶ 3, 4). His Lincoln was also not registered or located in Arizona. (*Id.* at 6, 7). Even more, Plaintiff only identified Thueringer as the true owner of the Lincoln after the sale took place and the Lincoln was not delivered. (Doc. 16-1 at ¶ 9). Until that point, they had no contact. (*Id.*) Therefore, Plaintiff has likewise failed to make a *prima facie* showing of purposeful availment or purposeful direction on the part of Thueringer, and the Court must dismiss him from this case for lack of personal jurisdiction.

### c. Defendant Maribel

Although Maribel is not a moving party to Defendants' Motion, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (internal citation omitted). Plaintiff's Complaint alleges a consumer fraud violation under A.R.S. § 44-1522(A) against Maribel for his "deception of inducing [Plaintiff] to pay $100,000 for the Lincoln that would never be delivered . . . ." (Doc. 1-3 at ¶ 29).

As discussed, in intentional tort cases, "a forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Axiom Foods*, 874 F.3d at 1068. The

purposeful direction test requires that Maribel: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1069 (citation omitted).  Even assuming Maribel's acceptance of Plaintiff's payment satisfies the first element, Plaintiff has not established the second element because, like Tollefson, Maribel did not target Arizona in any of his conduct.  *See Schwarzenegger*, 374 F.3d at 807 (holding that jurisdiction exists where a defendant intentionally targets his harmful conduct—not necessarily where a plaintiff resides).  Plaintiff's Complaint alleges no interactions between Maribel and Plaintiff apart from Plaintiff wiring his payment to him.  (Doc. 1-3 at ¶ 23).  Nor does Plaintiff allege Maribel conducts regular sales in Arizona or allege any other obligations to the forum state.  Plaintiff has therefore failed to make a *prima facie* showing that Maribel's conduct was expressly aimed at Arizona, and he fails to satisfy the second element of the purposeful direction test.

Accordingly, Plaintiff has failed to meet his burden under prong one of the minimum contacts test and the Court must dismiss Maribel from this case for lack of personal jurisdiction.

**IV.  Conclusion**

Because Plaintiff has failed to carry his burden on the first prong, the Court need not consider the remaining prongs.  *Burger King*, 471 U.S. at 476–78.  The Court finds that it lacks personal jurisdiction over Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Shea Theuringer, Selluxe Group, and Brian Tollefson's Motion to Dismiss (Doc. 7) is **granted**.  This matter shall be **dismissed** and the recently filed Joint Motion to Amend Schdeduling Order (Doc. 28) **denied** as moot.

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that the Clerk of the Court shall terminate this matter.

Dated this 10th day of August, 2023.

_____
Honorable Diane J. Humetewa
United States District Judge